Harold W. Bennett,

*vs.*

National Lycoming Corporation, a corporation of the State of Delaware, and Paul Leahy, Receiver of National Industrial Finance Association, a corporation of the State of Delaware,

*Defendants,*

Frederick Tonyes and J. Albert Bayley,

*Intervening Defendants.*

*New Castle, April 24, 1935.*

*Percy Warren Green* and *Joseph H. Carr,* of Camden, N. J., for complainant and cross-defendant.

*James R. Morford,* of the firm of Marvel, Morford, Ward & Logan, and *Mortimer C. Rhone,* of Williamsport, Pa., for defendant National Lycoming Corporation and cross-complainant.

*William H. Foulk,* for defendant Paul Leahy, receiver of National Industrial Finance Association.

*C. Edward Duffy,* of the firm of Hastings, Stockly & Duffy, for intervening defendants, Tonyes and Bayley.

THE CHANCELLOR: At the conclusion of the taking of the testimony, I asked for argument upon only one point, viz., the competency of the complainant to maintain this suit. The complainant was one of the "depository trustees." The Court of Chancery of New Jersey entered an order removing the complainant's two associates and constituting him sole depository trustee. The duties of the trustees were to receive and hold certificates for shares of National Industrial Finance Association stock, endorsed in blank, until a specified minimum quantity had come in, then deliver the

shares to National Lycoming Corporation, receive in exchange from that corporation its certificates and pass the latter on to the depositors. Thus the trustees were merely agents whose duties were entirely custodial and ministerial.

The proposed exchange is attacked because it is said to have been induced by fraud. If so, the question arises—what right has Bennett, trustee or agent, to seek to defeat it? The solicitors for the complainant are entirely right when they say as they do on their brief, that the injury done by the alleged fraud was done to the stockholders of National Industrial Finance Association. Bennett's principals are the ones, if any, who were injured by the alleged fraud. Suppose they are satisfied to let the matter stand, what right in either law or equity has Bennett, the agent, to ask a court to undo it? If there was a fraud in the representations which induced the exchange, every stockholder who was misled thereby has a right to complain. The grievance is individual to each stockholder. It is not a class grievance in the sense that one of the exchanging group can take up the legal cudgels in behalf of all. Conceding *arguendo* that the rankest fraud induced the exchange of every one of the shares, yet it must be clear that if any victim of the fraud chooses to abide by his sorry bargain it is his right to do so. It is not for Bennett or any other man to insist that he shall not.

Much emphasis appears to be placed on the fact that the letter to the stockholders of National Industrial Finance Association informed them that certificates for the National Lycoming Corporation's stock which was to be received in exchange would be delivered by that corporation to the depository trustees, and that no such delivery was ever made or tendered. That is all true. But the point does not appear to be of any decisive importance. This is so for the reason that the trustees themselves instructed National Lycoming Corporation not to deliver the certificates to them, whose sole duty with respect to them would be

to pass them along to the depositors, but, in the interest of expedition, to deliver the certificates directly to the depositors to whom they belonged. It was not essential that the certificates pass physically through the hands of the trustees. The trustees could without breach of trust authorize the delivery to be made direct. Certainly it would seem to be beyond all reason to say that Bennett could rescind the entire exchange agreement on the ground that one of the parties to it had accepted instructions of himself and associates as to a detail of the delivery which they were bound to effectuate. The important thing was to get the National Lycoming stock into the possession of the persons who had traded for it. The instructions of the trustees to National Lycoming Corporation arranged for that in the most direct and expeditious way. The certificates are all made out in the names of the respective parties entitled to them, and the National Lycoming Corporation now desires and has desired to deliver them. The New Jersey litigation with its outstanding restraint has caused the National Lycoming Corporation to hesitate to act. Under those circumstances, it does not appear that the conduct of National Lycoming Corporation has been such as to warrant the view that, because its shares have not yet been delivered, the whole exchange arrangement should be rescinded on the application of the agent of principals who have not chosen to act for themselves.

If the trustee or agent were in this case seeking to compel the National Lycoming Corporation to make the deliveries of its certificates to the depositors, he might be said to be exerting himself in a matter that is of litigable concern to him. But where he seeks to nullify the entire transaction with which many of his principals may well be satisfied, I am of the opinion that he undertakes a role which he is not entitled to enact. His bill, I think, should be dismissed.

The defendant, National Lycoming Corporation, has

prayed in its cross-bill for relief which if granted would enforce the completion of the exchange. The same considerations which lead me to conclude that Mr. Bennett has not the status necessary to enable him to press for a recission of the exchange, logically lead to the converse conclusion that he has not the representative character or status which it would be necessary for him to have in order that the cross-relief of enforcement of the exchange, if the proof justified it, be granted. If Bennett lacks the status of a representative of the stockholders necessary as complainant in their behalf to upset the transaction if it is invalid, he lacks the same representative character as cross defendant to bind the stockholders to a possible decree confirming and validating the transaction.

Both the bill and the cross-bill should be dismissed without prejudice to the rights of any of the parties in interest upon the merits.

What has been said in the foregoing makes it unnecessary for me to enter upon an examination of the question of whether the exchange of stock was induced by fraudulent representations. The solicitors for the complainant state that the Court of Chancery of New Jersey adjudicated this question in favor of the complainant's contention. An inspection of the record in the New Jersey Chancery Court reveals the inaccuracy of that statement. Whatever adjudication that court made is not binding on National Lycoming Corporation for the reason that that corporation was never served with process in the New Jersey proceedings. Furthermore, it appears very clearly that the Vice-Chancellor of New Jersey, instead of finding fraud to have been practiced in securing the exchange, quite clearly made no finding upon the question. He left it open for subsequent determination. But this head of the case needs no further discussion for the reason as already stated that the complainant is not entitled to maintain the bill.

Decree accordingly.